[Sac. No. 435.    Department Two.—December 22, 1898.]

J C. BALL et al., Respondents, v. J. E. PUTNAM et al., Defendants. F. G. CRAWFORD et al., Appellants.

ACTION UPON NOTE—PLEADING—VARIANCE—AMENDMENT.—Where there is a variance between a promissory note set out *in haec verba* in a complaint thereon, and the form of the note produced in evidence, if an objection is made that they are not the same, although the variance is not material, good practice requires that the variance be explained, and that any error found to exist in the copy set out in the complaint should be corrected by amendment.

ID.— GENERAL DENIAL — NONPAYMENT — EVIDENCE — CROSS-EXAMINATION.—A general denial of an unverified complaint in an action upon a note puts in issue the nonpayment of the note, and renders material and relevant any evidence on the subject of payment; and the plaintiff, who has testified on examination in chief that only the amount credited in the complaint was paid

on the note, may be cross-examined as to whether there was not another payment, and if he had not so stated at a time and place, and to a person named.

ID.—ADMISSION IN SEPARATE DEFENSE.—An admission in a separate defense by failure therein to deny the nonpayment of the note is not available by the plaintiff in proof of the issue as to nonpayment raised by the general denial.

ID.—PUBLIC POLICY—VOID CONTRACT—DUTY OF COURT.—If the consideration of the note in suit was a contract which was against public policy, good morals, or the express mandate of the law, the note cannot be made the basis of any action, legal or equitable; and it is the duty of the court to make inquiry upon that subject, and to withhold relief, if satisfied that such is the fact. Neither the silence nor the consent of the parties justifies the court in retaining jurisdiction of such an action.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. Frank Moody, Judge.

The facts are stated in the opinion of the court.

Cannon & Freeman, and Ben. F. Geiss, for Appellants.

F. C. Lusk, and S. Millington, for Respondents.

THE COURT.—Action upon a promissory note. The cause was tried without a jury, findings were waived, and judgment entered for plaintiffs. Said appellants appeal from the judgment and from an order denying a new trial.

The complaint alleges that on March 6, 1889, the defendants made their promissory note "in words and figures following:

"Sacramento, Cal., March 6, 1889.

"For value received, we, and each of us, promise to pay to J. C. Ball and J. R. Troxel the sum of six thousand dollars ($6,000) on or before the fifteenth day of March, 1889, with interest at the rate of ten per cent per annum from date.

"(Signed)   AUGUST HENNING,
"K. E. KELLEY,
"J. E. PUTNAM,
"F. G. CRAWFORD,
"W. H. KELLEY,
"JOSEPH MULLER."

It is also alleged that plaintiffs are the owners and holders of said note, and that no part of it has been paid except the sum of two thousand eight hundred and ninety-two dollars and fifty cents, which was paid on March 8, 1889. The complaint was not verified.

The defendants, for a first defense, denied each and every allegation of the complaint; and, for a second and separate defense, set out a detailed history of the circumstances under which the note was made, and, with much less perspicuity, the purposes for which the money represented thereby was intended and was in fact used.

The substance of said second defense is that all the parties to the note were in the city of Sacramento on March 6th; that plaintiffs represented to defendants that they had promised to pay to "certain persons" in said city the sum of six thousand dollars, and were in immediate need of the money, which was to be paid to said persons at 10 o'clock the next morning; that they did not have the money, but would receive that sum from the Bank of Willows, in Colusa county, at 4 o'clock the next day; that if the defendants would make said note the plaintiffs would indorse it and raise the money at a bank in Sacramento, and when the money should arrive from Willows in the afternoon they would take up said note and destroy it; that such was the only purpose for which they would use the note, and that in no event would any of the defendants ever be required to pay it or any part of it; that, relying on these representations, they made the note; that defendants received no consideration for it, and the facts set out was the only consideration; that plaintiffs never used said note for the purposes for which they said it was intended, and now hold said note without paying any consideration therefor.

The statement on motion for a new trial contains nearly two hundred specifications of errors of law occurring at the trial, and also specifies several particulars wherein it is claimed the evidence is insufficient to justify the decision.

Findings having been waived, we look to the evidence for the circumstances surrounding the execution of the note upon which this action is based.

At the time this note was made a certain bill was pending in

the legislature for the division of Colusa county and the creation of the county of Glenn. Prior to the meeting of the legislature, meetings of people interested in the creation of the new county were held, and a committee was appointed for the purpose of raising money in aid of its creation. The town of Willows seemed to be the center of activity. At the time the note here in suit was executed, the bill for the creation of Glenn county had passed, and was then pending on a motion to reconsider it. The promoters of the bill had a "headquarters" in the city of Sacramento, and on the evening of March 6, 1889, at the time the note in suit was executed, all the parties to the note, and many others interested in the new county, were present in the rooms occupied as the Glenn county headquarters. The finance committee above mentioned, consisting of Mr. O'Brien, Mr. French, and another, were not present at Sacramento. J. C. Ball, one of the plaintiffs, was the disbursing agent, to see that the money was properly expended. At the time the note was executed it was stated and understood that an obligation had been entered into with a person not named, but who was then in Sacramento, by which there was to be paid to said person, on the following morning at 10 o'clock a sum roundly stated at fifteen thousand dollars, and in order to meet that payment the sum of six thousand dollars, in addition to the money on hand, would have to be raised. The defendants testified, in substance, that the plaintiffs represented that said sum of six thousand dollars was then on deposit in the Bank of Willows, but that it could not reach Sacramento until 4 o'clock the next day, but that if defendants would execute said note the plaintiffs would indorse it and raise the money thereon at a bank in Sacramento, and when the money arrived in the afternoon they would take up the note and destroy it. The note was accordingly executed. Plaintiffs testified, in substance, that they did not represent that said or any sum was in the Bank of Willows, that they did not represent that they would raise said sum of six thousand dollars on said note, but if defendants would make said note that they would raise or furnish the money, and that they did not use the note, but raised said sum on their own sight draft on the Bank of Willows; fourteen thousand five hundred dollars was

drawn from the bank at Sacramento on the morning of the 7th and paid over to the "person" with or to whom the obligation was contracted.

The differences between the note set out in the complaint and the note put in evidence did not constitute a material variance. The objection having been made that they were not the same, good practice required that the variance be explained, and if the errors were found to be in the copy set out in the complaint an amendment should have been made.

J. C. Ball, one of the plaintiffs, was called on their behalf and testified that no payments had been made on said note other than the sum of two thousand eight hundred and ninety-two dollars and fifty cents, indorsed thereon March 8, 1889. On cross-examination he was asked several questions in relation to said credit, and as to whether the payments were made to him; when it was paid; whether it was paid by the defendants; whether it was not a fact that more money had been paid that should be credited; whether one thousand dollars had not been paid that was not credited; whether he had not stated at a time and place, and to a person named, that he had received or would receive and credit upon said note the sum of about fifteen hundred dollars.

These questions were each objected to upon the ground that they were immaterial and not within the issues, that it is not denied by the answer that a certain sum was paid, and that they were not proper cross-examination. The objections to each of said questions were sustained and exceptions taken. These rulings were erroneous. There were two defenses, the first being a general denial which put in issue every material allegation of the complaint. The second defense alleged the circumstances, purpose, and consideration of the note, but did not put in issue the amount alleged in the complaint to have been paid thereon, or the amount remaining unpaid; and, because issues upon these allegations of the complaint were not taken by the second defense, the court and counsel for the plaintiffs treated the allegation of the complaint that no part of said note had been paid, other than the sum credited, as undenied, and therefore admitted. But this conclusion nullifies the denials contained in the first defense, which put in issue all the material allegations

of the complaint. It is well settled that an admission in one answer or defense is not available by the plaintiff in proof of issues raised by another answer or defense pleaded in the same case. (*Siter v. Jewett*, 33 Cal. 92; *Nudd v. Thompson*, 34 Cal. 39, 47; *Miller v. Chandler*, 59 Cal. 540; *Botto v. Vandament*, 67 Cal. 332.)

These questions were also proper cross-examination. Mr. Ball testified that no other payment than the one credited had been made, and thus the door for cross-examination was thrown wide open.

At the time plaintiffs raised said sum of six thousand dollars on their sight draft upon the Bank of Willows they had no funds to their credit in said bank. Afterward the note here in suit appears to have been deposited to the credit of plaintiffs in said bank, or as collateral to their own obligation. It further appears that said bank was the depository of contributions to the Glenn county fund collected by the finance committee, and that the credit indorsed upon said note was paid from funds so collected, and was credited on March 8th—the second day after the note was made, and before its maturity.

Mr. Burton, the cashier of said bank, was called by the defendants and shown the note in suit, and recognized pencil memoranda thereon made by him. He was then asked by counsel for defendants: "Is it not a fact that there has been paid into the Bank of Willows, since the time the note was given to the bank and held by the bank as collateral security, the sum of one thousand dollars as a credit upon the note, for which this note was held as collateral security to you, and which sum would release this note to that extent?" An objection was sustained. Thereupon defendants offered to prove by said witness that there was paid one thousand dollars into the bank, and that the parties making the payment requested at the time the payment was made that it be applied to the payment of the note in suit.

Plaintiffs objected that it was not competent or material in that there is no answer setting forth a defense of payment, and the objection was sustained. The evidence was clearly admissible under the general denial which put in issue the averment of the complaint that no other payment had been made than the one credited.

Other erroneous rulings were made, some of which were prejudicial, but as the matters involved will not necessarily arise upon another trial they need not be noticed. Enough has been shown to require a reversal of the judgment.

But, since the judgment is to be reversed, this should be added. There is evidence in the record tending to show that the contract which lay at the bottom of all the transactions between these parties was a contract void as against public policy. Not enough appears to justify this court in saying that such is the fact, but enough appears to call for rigid inquiry by the trial judge, and if, after such inquiry, the evidence elicited leads him to believe that such is the fact, he will withhold all relief in this action, for a contract which is against public policy, good morals, or the express mandate of the law cannot be made the basis of any action, legal or equitable. Neither the silence nor the consent of the parties to it justifies the court in retaining jurisdiction of such an action. (*Chateau v. Singla,* 114 Cal. 91; 55 Am. St. Rep. 63.)

The judgment and order are reversed and the cause remanded.

Hearing in Bank denied.