[Civ. No. 3905. First Appellate District, Division One.—July 15, 1921.]

GUARANTY LOAN COMPANY (a Corporation), et al., Petitioners, v. J. W. TREADWELL et al., Respondents.

[1] CORPORATIONS—STOCKHOLDERS' MEETING—REMOVAL OF BOARD OF DIRECTORS—VALIDITY OF MEETING—EVIDENCE.—In this proceeding for a writ of mandate to compel a removed board of directors of a corporation to deliver the records, papers, seals, and other documents of the corporation to their successors, it clearly appears from the evidence that the stockholders' meeting at which the respondents were removed and the petitioners elected was a valid meeting.

[2] ID.—STOCKHOLDERS' MEETINGS—NOTICE.—Statutes requiring notice of stockholders' meetings are for the benefit of the real stockholders and the necessity does not arise when all are present and acting.

APPLICATION for a Writ of Mandate to compel the delivery of records of a corporation. Granted.

The facts are stated in the opinion of the court.

A. E. Shaw and Edwin H. Williams for Petitioners.

Fabius T. Finch for Respondents.

THE COURT.—Application for a writ of mandate to compel respondents to deliver over to petitioners, papers, seals, and other documents belonging to the above-named corporation.

It is alleged that the company has issued and outstanding capital stock of 324 shares, of which amount 321 shares thereof are in the name of the Goewey Estate Company, the others being issued in three certificates for one share each, in the names of James W. Treadwell, Bernard E. Tormey, and R. H. Briare, respectively. These latter shares, it is recited, were issued for the sole purpose of qualifying the person in whose name it stood to act as a director of the corporation, and for no other purpose, the beneficial ownership in the entire stock being in the Goewey Estate Company, which is a holding concern for its subsidiary, the Guaranty Loan Company.

On or about the sixteenth day of April, 1921, the Goewey Estate Company by and through resolution duly passed, called a meeting of the board of directors of that concern, and at such meeting ordered and directed that the three certificates for one share of stock each in said Guaranty Loan Company standing in the names of the persons aforesaid be canceled and reissued in the names of Edwin H. Williams, Chalmer Munday, and Ernest Gendotti, and that thereafter and prior to April 23, 1921, written demand was served on respondents by said Goewey Estate Company, demanding that respondents transfer said certificate of stock in accordance with said resolution, but that they neglected and refused to comply with such demand and still do so.

By further allegation it appears that on April 20, 1921, the Goewey Estate Company called a meeting of that concern and at such meeting ordered and directed that a stockholders' meeting of the Guaranty Loan Company be called at its office located at 607 Bank of Italy Building, San Francisco, for the purpose of ousting the board of directors of the Guaranty Loan Company and electing a new board in its place. At this meeting Edwin H. Williams was duly authorized and empowered to vote the stock of the Goewey Estate Company in the Guaranty Company for the purpose of ousting the old board of directors and electing a new board in its place. Accordingly, on April 25, 1921, a meeting was held at which time there appeared and was present Edwin H. Williams, said Williams being present as proxy and attorney in fact for the Estate Company, and Williams, Munday, and Gendotti representing the remaining three shares of the outstanding stock of the Guaranty Company. Notice of the time and place of the meeting was waived and consent to the holding of such meeting was given in writing by all the stockholders of the company represented as aforesaid. Thereupon, by resolution, Treadwell, Tormey, and Briare were ousted as directors and officers and Williams, Munday, and Gendotti were chosen in their place. Immediately thereafter Williams was elected president and Munday secretary and they ever since have been, and now are, the duly acting president and secretary of such company. At this last-mentioned meeting a resolution was passed instructing the president to demand and receive the books, records, papers, and seal of the corporation, and

empowering him to do any and all acts necessary to procure possession of the same. Then follow allegations of demand on respondents for the records and their refusal to comply therewith, which are followed by allegations that petitioners will suffer damage in consequence of such refusal.

Respondents by their return deny that the office of the Guaranty Loan Company was or is now located at the place mentioned, and allege in this connection that on April 12, 1921, and at all times subsequent thereto, it was and is located at the Hotel Wilson, No. 125 Mason Street, and except as to the beneficial ownership of all of the stock of the Guaranty Loan Company being in the Goewey Estate Company, the allegations of the petition hereinabove enumerated are denied. They further plead that no notice was ever given to them or R. M. Briare of any alleged or called meeting of the Guaranty Loan Company, notwithstanding, as they assert, that they and Briare were and had been continuously for more than ten days prior thereto stockholders of record of said company and that no notice of any meeting was ever given as required by sections 301 or 310 of the Civil Code, or otherwise.

The case is another of the many actions brought by the Goewey Estate Company and its subsidiary companies involving their internal management. It appears from the record that Williams and Gendotti, who control the new board of directors of the Goewey Estate Company, own out of the 1,000 shares of the issued stock of that corporation 598 shares thereof, and that respondents own 50 shares, and further, that all of the capital stock of the Guaranty Loan Company is owned by the Goewey Estate Company. The situation is thus presented of the minority stockholders seeking to control the affairs of the involved corporations. The solution of the situation depends for the most part upon the validity of the meeting of the Goewey Estate Company in April, 1921. A review of those proceedings therefore becomes necessary. It appears in evidence that a stockholders' meeting of that company was held on the eleventh day of April, 1921, at its place of business, 607 Bank of Italy Building, San Francisco. On that day the meeting was called to order by Treadwell, the then president of the company, and B. E. Tormey, acted as secretary. The roll of stockholders being called, Williams

answered as being the holder of 349 shares of the capital stock of that company and Gendotti answered as holding 249 shares, Tormey as holding one share and Treadwell as holding 50 shares.

Immediately after the calling of the meeting, Treadwell presented to Gendotti a restraining order issued in an action pending in the superior court by the Goewey Investment Company, another subsidiary concern of the Goewey Estate Company. This order restrained Gendotti from voting his stock at the meeting, the ownership of which was questioned in the action referred to. Upon receiving the injunction, all parties seem to have been under the impression that the writ was directed against the meeting, and that an adjournment was necessary. Upon examining the order, however, Williams ascertained therefrom that such was not its purpose and he thereupon announced that a quorum being present, the meeting could proceed to the election of a board of directors. He then opposed a motion to adjourn put by Treadwell, but his right to do so was denied. Williams appealed from this ruling, voting his 349 shares of stock in support thereof, which shares constituted a majority vote. Notwithstanding this action on the part of Williams, Treadwell declared the meeting adjourned, Williams voting his stock against such adjournment. Treadwell and Tormey then left the meeting. Williams thereupon nominated himself chairman and nominated and elected himself, Gendotti, and Tormey as directors, voting his majority stock in both instances. The meeting was then adjourned until April 16, 1921. The injunction in the meantime had been dissolved. The adjourned meeting was held and the election of directors had on the meeting of April 11, 1921, was confirmed, Williams and Gendotti voting their 598 shares in favor of a resolution to that effect. To save all question and out of precaution, a new election was again held at this adjourned meeting, both Williams and Gendotti voting their stock for the same directors elected previously. [1] From this evidence we think it clearly appears that the meeting of April 11, 1921, was a valid one and that the election of the Williams board at that time was consequently regular and valid. This being so, any subsequent proceeding had by the Treadwell board, including their attempted removal of the office of the company, was a mere nullity.

We are of the further opinion that the evidence shows that the members of the Treadwell board received the demands made by the Williams board to transfer the stock held by them in the Guaranty and Loan Company, in accordance with the resolution of that company. Upon receiving these notices respondents ceased to be stockholders in name in the company, and were therefore no longer concerned with its management and they were not entitled to notice of the meeting held by it on April 25, 1921, of the absence of which they complain. Even assuming that the giving of notice of such meeting was necessary, where, as here, all of the stock was present and represented, they owned no beneficial interest in the stock and were therefore not such parties who could complain. (See 14 Corpus Juris, p. 894.) [2] Statutes requiring notice are for the benefit of the real stockholders, and this necessity does not arise when all are present and acting. (Thompson on Corporations, p. 1009, sec. 824.) Nor does the fact that respondents refused to make the transfer avail them. Their refusal was wrongful and they cannot profit thereby. (*Guaranty Loan Co.* v. *Fontanel,* 183 Cal. 1, [190 Pac. 177].)

Further discussion is unnecessary. It is ordered that a peremptory writ of mandate issue, commanding respondents to turn over to petitioners the records, papers, seal, and other documents belonging to said corporation petitioner.